**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BONITA A. POWERS, INDIVIDUALLY** | ) | **CASE NO. 1:22-cv-00198** |
| **AND AS EXECUTRIX OF THE ESTATE** | ) | |
| **OF JAMES C. POWERS, Deceased,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **OPINION & ORDER** |
| **THE CLEVELAND CLINIC** | ) | |
| **FOUNDATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is Defendant Cleveland Clinic Foundation's ("CCF") Motion for Judgment on the Pleadings, under Federal Rule of Civil Procedure 12(c), or in the alternative, Motion to Dismiss under Rule 41(b) (collectively, the "Motion"). ECF 55. Plaintiff Bonita Powers opposes the Motion on all grounds. ECF 57. For the reasons discussed below, the Court GRANTS the Motion pursuant to Rule 41(b) and dismisses Powers' Amended Complaint, ECF 40-1, with prejudice.

## I.   BACKGROUND

The medical treatment at the center of this case occurred nearly seven years ago, and Powers' litigation against CCF has been before this Court in one form or another for over five years. Indeed, the factual and procedural background of this case is quite lengthy. Rather than recounting the entire factual and procedural background of this case spanning the better part of a decade, this Court only recounts the most salient points for the purposes of this Order.

Powers' first complaint regarding her husband's (Dr. James Powers) treatment and death while at the Cleveland Clinic was filed in October 2020 ("2020 Complaint"). *See* Complaint,

*Powers v. Cleveland Clinic Found.*, No. 1:20-cv-02293 (N.D. Ohio Oct. 9, 2020), Dkt. No. 1. In light of related ongoing litigation in New York state court ("New York Case") also alleging medical malpractice and wrongful death,[1] the 2020 Complaint was dismissed without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), to be re-filed at a later date if necessary. Amended Order, *Powers v. Cleveland Clinic Found.*, No. 1:20-cv-02293 (N.D. Ohio Feb. 9, 2021), Dkt. No. 12.

More than one year later, on February 4, 2022, Powers filed the instant action ("Ohio Case"). ECF 1. The Ohio Case Complaint was identical to the original 2020 Complaint, including the same parties, factual allegations, and causes of action (including wrongful death allegations). *Compare* Complaint, *Powers v. Cleveland Clinic Found.*, No. 1:20-cv-02293 (N.D. Ohio Oct. 9, 2020), Dkt. No. 1 (containing 149 paragraphs), *with* ECF 1 (instant complaint, also containing 149 paragraphs). The five individual doctors re-named as defendants were later dismissed. *See* ECF 13. Since the parallel litigation in the New York Case was still ongoing, this Court formally stayed the Ohio Case in October 2023. *See* Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Oct. 11, 2023).

The Ohio Case remained stayed for nearly one and a half years, when Powers filed a motion to lift the stay on March 18, 2025, noting the need to proceed with litigation because the New York Case had only continued to stall. ECF 26. CCF objected to lifting the stay, stating that Powers could not "point to any change in circumstances that would justify the stay being lifted" and that, because many of the delays in the New York Case appeared to be self-inflicted, Powers had "not

---

[1] Dr. Powers was treated at a New York hospital before he was transferred to the Cleveland Clinic on or about April 10, 2019. He died at the Cleveland Clinic on April 22, 2019. *See* ECF 40-1, ¶¶ 19-38.

demonstrated the ability to litigate the New York action in a timely fashion and should not be rewarded for that by lifting the stay here." ECF 27, at 2-3.

The Court held a status conference discussing Powers' motion and the status of the New York Case on March 26, 2025. During that status conference, the Court learned that Powers had filed what was essentially a "placeholder" to toll the statute of limitations for a potential medical malpractice and wrongful death case related to her husband's care in Pennsylvania ("Pennsylvania Case").[2] This meant that "Powers was pursuing wrongful death claims in three separate states against three separate medical centers. While it is certainly possible that any or all three of the medical facilities could be liable for malpractice or negligence, axiomatically only one facility could be liable for wrongful death." ECF 43, at 3 n.1. Based on the conversations at the status conference, the Court decided to lift the stay on the Ohio Case (over CCF's objection), but directed Powers to file proof no later than April 9, 2025, of her intention to withdraw the wrongful death claims in the New York Case and Pennsylvania Case. Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Mar. 26, 2025).

The April 9, 2025 deadline passed with no updates from Powers as to the status of the New York Case or the Pennsylvania Case. When the Court issued a litigation schedule on April 11, 2025, it also ordered Powers "to file proof of motions to dismiss wrongful death claims in [the] New York [C]ase and Pennsylvania [C]ase by 12:00 p.m. on 4/17/2025 <u>or the Court will impose sanctions</u>." Amended Order [non-document], *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Apr. 11, 2025) ("April Scheduling Order") (emphasis added). Shortly after the status conference, and only hours after the April Scheduling Order was issued, Powers' counsel moved to withdraw his appearance in the case, based upon Powers' disregard of his legal advice,

---

[2] Dr. Powers had been treated at a medical facility in Pennsylvania before he was treated at the New York Facility. *See* ECF 40-1, ¶¶ 16-17.

violation of his instructions, and failure to comply with her duties as a client. *See* ECF 29. The

Court granted the motion to withdraw, and ordered

> that Plaintiff file by noon on Friday, July 18, 2025, both: (1) an appearance from new counsel; and (2) proof of filings dismissing the wrongful death claims in the New York and Pennsylvania cases. If Plaintiff fails to file either of these documents, <u>the Court will dismiss this case for want of prosecution</u>.

*See* Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio

Apr. 18, 2025) (emphasis added).

Powers' new counsel (who is still her current counsel of record) made a timely appearance

on July 17, 2025, pursuant to the Court's order. *See* ECF 31. At the same time, however, Powers

and her counsel informed the Court that they had only been able to partially comply with the

Court's order, and that, as of filing that notice, had not yet been able to dismiss the wrongful death

claims in the New York Case and Pennsylvania Case. ECF 32. This was the third of five

extensions[3] sought—and granted, until August 20, 2025—for Powers to provide proof of the

required dismissals.

Despite telling the Court for five years that she wanted to pursue wrongful death in the

Ohio Case, Powers ultimately determined that the New York Case was the appropriate vehicle for

that claim. She informed the Court of her intention to withdraw the wrongful death claim from the

Ohio Case at the August 20, 2025 Case Management Conference. Again, the Court made clear that

Powers would only be permitted to pursue a wrongful death claim in one jurisdiction, so any

amended complaint in the Ohio Case would need to drop the wrongful death claim. With that in

mind, the Court set a briefing schedule for Powers to amend her complaint. ECF 37.

---

[3] The first extension was from April 9, 2025, to April 17, 2025, when Powers failed to file a timely notice. The second extension was when the Court granted Powers' prior counsel's motion to withdraw on April 17, 2025, and gave Powers until July 18, 2025, to secure new counsel and file proof of the dismissals.

4

Simultaneously, the Court set a litigation schedule with dates "calculated from the day an order granting the motion would be issued." *Id.*, at 2 In relevant part, the order stated that Powers' expert reports would be due sixty days after the issuance of an order granting the motion to amend. *Id.*

Powers timely filed her motion to amend the complaint, along with the proposed amended complaint ("First Amended Complaint") on September 22, 2025. ECF 40. CCF filed a memorandum in opposition to the motion to amend on October 6, 2025. ECF 41. Powers filed her reply in support on October 14, 2025. ECF 42. The Court chose to conditionally grant Powers' motion, requiring that she first reimburse CCF for expenses CCF reasonably incurred defending itself on the wrongful death claim (via improper fentanyl administration) that she was abandoning in the First Amended Complaint. ECF 43. Powers was ordered to personally reimburse CCF, as opposed to her counsel paying the costs at this juncture. *Id.* Only once CCF had been paid in full would the First Amended Complaint be considered "filed" for the purposes of litigation deadlines. When the Court conditionally granted the First Amended Complaint on October 24, 2025, it adjusted the previously issued litigation schedule "in light of the upcoming holiday season." ECF 43. In relevant part, the new litigation schedule required that Powers produce her expert reports by January 12, 2026. *Id.*, at 11.

CCF filed an accounting of the relevant fees and costs on November 7, 2025. ECF 46. Powers disputed whether some of the accounting entries included by CCF in its filing were actually within the scope of the Court's order, *see* ECF 47, leading to additional briefing on the question. Ultimately, this Court approved on November 25, 2025, CCF's accounting as initially filed. ECF 49. In that Order, the Court set specific deadlines for when Powers must remit payment to CCF and when CCF's responsive pleading to the First Amended Complaint would be due. *Id.*, at 2. Though the fourteen-day window for CCF's responsive pleading had been adjusted, the Court

5

made explicitly clear that "[t]he remainder of the litigation schedule previously established by the Court remain[ed] unchanged." *Id.*

Powers paid the costs, *see* ECF 50 (notice by CCF of receipt of payment), and the First Amended Complaint became the operative complaint on December 15, 2026, *see* Order [non-document], *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Dec. 16, 2025). In the Order confirming that the First Amended Complaint was now the operative complaint and the deadline for CCF's responsive pleading, the Court reiterated that "[t]he remainder of the litigation schedule previously established by the Court remain[ed] unchanged." Order [non-document], *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Dec. 16, 2025). CCF filed a timely Answer to the First Amended Complaint on December 29, 2026. ECF 52.

On January 12, 2026, Powers filed a motion for extension of discovery and deadlines for expert reports. ECF 53. In response, the Court immediately scheduled a zoom status conference for that same day to discuss the motion. At that status conference, CCF alerted the Court that there were numerous allegations throughout the First Amended Complaint that, in violation of this Court's previous orders, alleged wrongful death. This included, *inter alia*, paragraphs 41-43 and paragraph 45 of the First Amended Complaint. Upon review of these paragraphs and others, the Court agreed with CCF that, despite Powers' contention that she tried to eliminate all wrongful death allegations, several remained. By alleging that the Cleveland Clinic caused Dr. Powers to die sooner she was, in effect, making a wrongful death claim. "[T]he Court reiterated that Plaintiff will not be permitted to pursue a wrongful death case against Defendant, directly or indirectly, because she elected to continue to pursue her wrongful death claim against the New York medical facilities instead." Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Jan. 12, 2026). Ultimately, the Court stayed the litigation scheduling, including the

6

deadline for Powers' expert reports, and gave the Parties three weeks to discuss and determine how this case should move forward. *Id.* The Court urged the Parties to consider settlement, but, if not, Powers needed to file a new complaint that focused specifically on the ten days Dr. Powers was at the Cleveland Clinic and any allegations that his treatment (or lack thereof) caused unnecessary suffering.

On February 3, 2026, the Parties filed what was titled a joint status report, but really encompassed two contrasting and competing proposals for how to move forward. ECF 54. For Powers, she shared "new and unanticipated developments in the New York [C]ase"—namely, that, unbeknownst to Powers, the defendants there had filed a motion to dismiss for want of prosecution. *Id.*, at 2. Powers alleges that "she was not aware of [the motion] before the January 12, 2026[,] status conference because she had no New York counsel representing her," but that she had "received a large package of documents and forwarded it without opening the envelope" to her counsel in the Ohio Case. *Id.* As a result, the motion to dismiss was unopposed, and the New York state judge dismissed the New York Case with prejudice on January 23, 2026. *See* ECF 54-1 (attaching the dismissal order from the New York Case). Thus, the "failure [to remove the wrongful death claims in the First Amended Complaint] turns out to be serendipitous in light of the dismissal of the New York [C]ase with prejudice" and "[t]he wrongful death claim can and should continue in this Court after all" because "[t]here is no other court in which the wrongful death claim can or will be litigated except in this Court." ECF 54, at 3.

Conversely, CCF "respectfully suggests that an appropriate next step in this case would be a dismissal of all claims, with prejudice." *Id.* It specifically noted that the New York Case's dismissal with prejudice does not change the fact that this Court has repeatedly and clearly informed Powers that she "will not be permitted to pursue a wrongful death case against Defendant,

directly or indirectly, because she elected to continue to pursue her wrongful death claim against the New York medical facilities instead." *Id.*, at 4 (quoting Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Jan. 12, 2026)). CFF further pointed out that "this Court made no guarantee as to the outcome of Plaintiff's wrongful death case in New York, on the merits or otherwise." *Id.* Thus, Powers "should not be permitted to directly or indirectly revive a wrongful death case against CCF at this juncture, simply because her New York case failed. Pursuit of a wrongful death case here violates the Court's prior Orders and unquestionably results in prejudice to CCF." *Id.* CCF further indicated that it was "completing drafting its Motion for Judgment on the Pleadings this week" and intended to file the motion promptly, suggesting that this Court adjudicate the forthcoming motion before taking any further action. *Id.*

The Court held a zoom status conference the next day on February 4, 2026. The Court expressed its displeasure with Powers' attempt to, once again, change where she was pursuing a wrongful death claim—particularly in light of the fact that she had repeatedly failed to excise the wrongful death claims from her operative complaint in the Ohio Case in violation of this Court's express orders. Ultimately, the Court agreed with CCF's proposed course of action and established a briefing schedule. Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Feb. 4, 2026). In accordance with that briefing schedule, CCF timely filed a Motion for Judgment on the Pleadings and/or Motion to Dismiss, pursuant to Rules 12(c), 16(f),

and/or 41(b), on February 6, 2026. ECF 55. Powers timely filed her opposition on March 2, 2026, ECF 57, and CCF filed its reply in support on March 16, 2026, ECF 58.

## II.  LAW AND ANALYSIS

CCF filed the instant Motion on February 6, 2026, alleging three potential grounds for dismissal of the Ohio Case: (1) judgment in favor of CCF on the pleadings, pursuant to Rule 12(c); (2) dismissal for failure to obey a scheduling or other pretrial order, pursuant to Rule 16(f); and/or (3) involuntary dismissal for failure to comply with the Court's orders, pursuant to Rule 41(b). The Court finds that CCF's third ground, regarding the application of Rule 41(b), to be well taken. Accordingly, because the Court will dismiss the Ohio Case with prejudice under that reasoning, it need not address CCF's other grounds for judgment on the pleadings under Rule 12(c) or dismissal under Rule 16(f).

### A.  Legal Standard

Federal Rule of Civil Procedure 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . operates as an adjudication on the merits.

*Id.*

District courts have at hand a wide variety of potential sanctions to rely upon when faced with bad faith actions or otherwise contumacious conduct. *See generally Link v. Wabash R. Co.*, 370 U.S. 626, 629-32 (1962) (recognizing the "well-acknowledged" inherent power of a court to levy sanctions "in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts"); *see also Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 362-63 (6th Cir. 1999) (noting Rule 41(b) provides the Court with "a tool to effectively manage its docket"). "A primary aspect of that discretion is the ability to fashion an

appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). There can be no doubt that involuntary dismissal, particularly with prejudice, "is a particularly severe sanction, yet is within the court's discretion." *Id.* at 45.

Within the Sixth Circuit, a district court's decision to involuntarily dismiss a party's lawsuit as a sanction (such as pursuant to Rule 41(b)) must be guided by four factors:

> (1) whether the party's [conduct] [was] due to willfulness, bad faith, or fault;
>
> (2) whether the adversary was prejudiced by the dismissed party's conduct;
>
> (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
>
> (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir.2005) (citing *Knoll*, 176 F.3d at 363); *see also Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (introducing these factors); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994) (explaining "that the factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same"). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013) (citation and internal quotation marks omitted).

To support a finding that a plaintiff's actions were motivated by willfulness, bad faith, or fault under the first factor, the plaintiff's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Wu*, 420 F.3d at 643 (brackets and internal quotation marks omitted) (concluding that the plaintiff's failure

to seek a default judgment did not evince the requisite intent under the first factor because the plaintiff had relied on the fact that a stipulated order to stay the proceeding was pending before the court); *see also Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 592 (6th Cir.2001) (finding that the plaintiff was not culpable under the first factor because the record lacked evidence showing that the plaintiff had either failed to respond to discovery requests or had acted in contempt of a court order compelling cooperation with such requests).

For purposes of the second factor, a defendant is prejudiced by the plaintiff's conduct where the defendant "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). In other words, "[w]here a plaintiff . . . is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a failure to prosecute." *Knoll*, 176 F.3d at 364 (quotation omitted).

In considering the third factor, "[p]rior notice, or the lack thereof, is . . . a key consideration," but it is not a strict requirement that the district court provide prior notice of its intention to dismiss a lawsuit. *Stough v. Mayville Community Sch.*, 138 F.3d 612, 615 (6th Cir. 1998); *see also Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010) ("As for the third factor, we have reversed the dismissal of certain cases where the district court failed to put the derelict parties on notice that further noncompliance would result in dismissal, but as this is just one factor, we have also held that prior warning is not indispensable." (quotations and citations omitted)); *Link*, 370 U.S. at 633 (noting that a district court can, in some circumstances, "dismiss a complaint . . . even without affording notice of its intention to do so").

Finally, regarding the fourth factor, the Sixth Circuit directs district courts "to look first to an alternative sanction that would protect that integrity of the judicial process." *Bradley J. Delp*

11

*Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514, 524 (6th Cir. 2016). However, the Sixth Circuit "has 'never held that a district court is without power to dismiss a complaint, as the first and only sanction,' and it is reluctant 'to require the district court to incant a litany' of possible lesser sanctions." *Id.* (quoting *Schafer*, 529 F.3d at 738); *see also Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997) (explaining that "in the absence of contumacious conduct, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal") (emphasis added).

## B. Discussion

Having determined that it is only necessary to adjudicate CCF's Rule 41(b) motion in order to resolve this matter, the Court now turns to the four equitable factors for assessing involuntary dismissal under that rule.

"A finding of fault" under the first factor "requires evidence that the plaintiff intended to 'thwart' the judicial proceedings or had a 'reckless disregard' for the effect that his conduct would have on the case." *Schafer*, 529 F.3d at 739 (quoting *Wu*, 420 F.3d at 643). CCF argues that Powers' failure to produce experts reports by January 12, 2026—or, at the very least, seek an extension of that deadline much earlier than that very same day—as well as her failure to comply with the Court's repeated orders regarding pursuit of a wrongful death claim against CCF satisfy this standard. *See* ECF 55, at 10-13; ECF 58, at 5-8. Regarding the alleged failure to timely produce expert reports, Powers contends that there were too many unknown variables in the months leading up to that deadline that prevented her from knowing what contested issues would been to be addressed moving forward. ECF 57, at 9. Additionally, Powers notes that the request for extension, and this Court's subsequent stay of the litigation schedule, came "on January 12, 2026, ***before*** those deadlines would have expired later that day." *Id.* (emphasis in original). In response, CCF

12

contends that this reasoning in unavailing because, even assuming there was no way for Powers to know which claims would move forward until CCF filed its Answer on December 29, 2025 (which CCF disputes, contending that this date was well past when Powers should have known about the need to retain expert support), that would still leave two weeks where she could have filed a motion for extension. ECF 58, at 5-6.

The Court finds CCF's arguments generally well-taken. While the Court does agree with Powers that no deadlines were actually missed, as the Court stayed the entire litigation schedule before the expert report deadline passed, *see* ECF 57, at 9-10, Powers had more than ample advance notice that expert testimony would be needed and should have filed her motion much sooner. As CCF aptly points out, "[t]here is no dispute that Plaintiff's claims asserted against CCF in her First Amended Complaint require[d] expert support." ECF 58, at 5. Further, the need for fact discovery to support those expert reports was likely to be extremely minimal, as at the Court's direction, the Parties filed a stipulation regarding the accuracy of Dr. Powers' medical records on September 5, 2025. ECF 38.

There is also the fact that Powers and her counsel had been on notice about the timing of expert reports since at least August 20, 2025. On that date, which is also when Powers first informed the Court of her intent to submit the First Amended Complaint, the Court set a litigation schedule. That schedule made very clear that expert reports would be due sixty days after any order granting the motion to amend complaint. ECF 37, at 2. When the Court conditionally granted Powers' motion to amend complaint, it again stated a litigation schedule, setting the January 12, 2026, expert report deadline at issue.[4] Twice after conditionally granting Powers' First Amended Complaint, this Court made clear that, even as specific deadlines regarding when CCF's answer

---

[4] The Court adjusted the initial litigation schedule, which called for expert reports to be due sixty days after that order (i.e., December 23, 2025) in light of the upcoming holiday season. *See* ECF 43, at 11.

to the First Amended Complaint shifted slightly, "the remainder of the litigation schedule previously established," including the deadline for expert reports, "remain[ed] unchanged." ECF 49, at 2; ECF 51 (non-document order). It is inconceivable that Powers and her counsel could not have realized much sooner the potential need for an extension of the litigation schedule.

If Powers' non-compliance with the deadline for expert reports was the only issue, then perhaps dismissal would be too harsh a remedy. Whether to seek an extension of the litigation schedule is typically a decision the attorney makes, rather than the client. "[T]he sanction of dismissal with prejudice 'deprives a plaintiff of his day in court due to the inept actions of his counsel,'" and the Sixth Circuit "has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." *Mulbah*, 261 F.3d at 590 (quoting *Patterson v. Grand Blanc Township*, 760 F.2d 686, 688 (6th Cir. 1985)). But the non-compliance with the deadline for expert reports is only part of a lengthy record of Powers' "reckless disregard" for the effect of her conduct on this action, particularly in light of the fact that Powers' offending actions pre-date the appearance of her current counsel. *See Link*, 370 U.S. at 633-34 ("There is . . . no merit to the contention that dismissal of [a plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client."); *see also id.* at 633 (affirming that the district court did not abuse its discretion to dismiss the case for failure to prosecute because "it could reasonably be inferred . . . from the drawn-out history of the litigation . . . that petitioner had been deliberately proceeding in a dilatory fashion").

When Powers asked this Court to lift the stay in the Ohio Case in March 2025, she stated that she "already ha[d] more than sufficient evidence to ensure that a jury will have to decide this case" on her theory of a fatal fentanyl overdose and that "[i]rrespective of the other litigation that is currently pending in the State of New York, Plaintiff is entitled to and should be permitted to

14

proceed with the litigation of this case." ECF 26, ¶¶ 16-17. At the status conference regarding that motion, Powers unequivocally indicated her desire to pursue a wrongful death claim in the Ohio Case.[5] Accordingly, this Court directed Powers to dismiss the wrongful death claims from the New York Case and the Pennsylvania Case. Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Mar. 26, 2025).

But just two weeks later, on April 11, 2025, her then-counsel moved to withdraw his appearance on behalf of Powers, citing that "diverse differences have existed and continue to exist between Plaintiff and [counsel] which have gotten progressively worse." ECF 29, ¶ 7. Counsel alleged that Powers had been "engaging in unilateral and clandestine conduct that has adversely affected" her lawsuits in all three states, and that Powers "has frequently disregarded [counsel's] legal advice, violated instructions [counsel has] given her, and failed to comply with the duties she assumed when she signed [counsel's] letter of representation." *Id.*, ¶¶ 4-5. At another status conference on April 17, 2025, to discuss this latest motion, the inability of Powers and her counsel to work together was apparent to the Court. Thus, the Court granted counsel's motion to withdraw and stayed the case for ninety days in order to afford Powers sufficient time to secure new counsel and to file proof of her dismissal of the wrongful death claims in the other two lawsuits.

New counsel entered a timely appearance on behalf of Powers, but requested an additional week to submit the required proofs of dismissal. ECF 31, 32. The Court granted this request. But then one more request for an extension became two requests, and then two requests became three requests.[6] ECF 34, 35. Each of these requests was filed on the day of the previously set deadline;

---

[5] Powers attended and participated in this conference, as well as all other status and case management conferences in the Ohio Case.

[6] The second request on July 25, 2025, was not styled as a request for additional time. In that filing, counsel noted that he had not yet secured local counsel for the New York Case, but attached a sworn declaration from Powers that she would file a stipulation in the New York Case "as soon as possible" agreeing that she would not be pursuing a wrongful death claim. ECF 34, at 2-3. In order to keep the Ohio Case moving in a timely fashion, the Court ordered that Powers file with the Court proof that the stipulation had been filed no later than August 18, 2025.

that is, none of them were filed in advance of the deadline. On the third deadline for filing proof of the required dismissal,[7] the Court held a new case management conference. It was there that Powers and her counsel raised, for the first time, the desire to amend the complaint in the Ohio Case to reflect a substantively distinct theory of medical malpractice and negligence[8]—but not wrongful death, reversing course from the past several years. The Court accepted Powers' decision to maintain the wrongful death claim in the New York Case and instead withdraw the claim from the Ohio Case, and set a briefing schedule for the proposed amendment.

Ultimately, the Court permitted the First Amended Complaint, and a new litigation schedule was issued. But in January 2026, during a status conference regarding the previously discussed motion for extension of deadlines and the expert reports, CCF alerted the Court to the fact that many of the allegations in the First Amended Complaint were just wrongful death claims under different names. The Court reviewed these allegations during that status conference and agreed with CCF that much of the First Amended Complaint appeared to be indirectly alleging wrongful death in violation of the Court's previous orders.[9] The Court immediately stayed the

---

[7] In the second deadline extension request on July 25, 2026, Powers informed the Court that "the Pennsylvania court issued an order dated May 14, 2025[,] requiring Plaintiff to file any lawsuit in that court not later than September 14, 2025." ECF 34, at 2. The Pennsylvania court further "required that any complaint that is filed 'shall be for medical negligence but not wrongful death.'" Id. (quoting id., at 5 (attaching the Pennsylvania court order in question)). Therefore, Powers was "effectively prohibited from bringing a wrongful death claim in the Pennsylvania court." Id. The Court accepted this as compliance with the Order regarding the Pennsylvania Case. However, Powers still had not complied regarding the New York Case—resulting in the third extension.

[8] Up until this time, Powers had been pursuing a theory that the Cleveland Clinic administered Dr. Powers doses of fentanyl far greater than what was medically justified.

[9] See, e.g., ECF 40-1, at ¶¶ 41 ("In fact, Dr. Powers likely was bleeding internally during most of the last two days of his life which caused him both conscious pain and suffering and which contributed to the pulmonary and cardiac arrests he suffered."), 42 (alleging that because of the Cleveland Clinic's actions, "Dr. Powers suffered increased illness, symptoms, physical injuries, complications, and pain and suffering he would not otherwise have suffered, including the additional impairment of his general health, strength, vitality, ambulatory capabilities, mobility and enjoyment of life, and an increased fear of death as he realized his condition was significantly worsening"), 43 ("Dr. Powers also suffered a loss of income upon his death including without limitation the loss of the retirement benefits and/or social security payments to which he was entitled."), and 45 (alleging that, because of the Cleveland Clinic's treatment of Dr. Powers, Plaintiff Powers and their children "have been damaged and have suffered anxiety, depression, emotional distress, mental anguish, inconvenience, permanent deprivation and loss of financial support, and all pecuniary benefits Dr. Powers would have provided to Plaintiff and their children, and the loss of Dr. Powers' love, services, advice, assistance, guidance, counseling, advice, companionship, society and consortium").

litigation schedule and directed the parties to confer and report back to the Court about a plan for how the Ohio Case should proceed. In doing so, "the Court reiterated that Plaintiff will not be permitted to pursue a wrongful death case against Defendant, directly or indirectly, because she elected to continue to pursue her wrongful death claim against the New York medical facilities instead." Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Jan. 12, 2026).

In the February 3, 2026 status report, Powers and her counsel <u>again</u> reversed course. Powers noted in the status report that her failure to remove the wrongful death allegations from the Ohio Case "turn[ed] out to be serendipitous" because the New York Case had been dismissed with prejudice for want of prosecution. ECF 54, at 2-3; ECF 54-1 (attaching to the status report a copy of the dismissal order in the New York Case). Therefore, Powers suggested, "[t]he wrongful death claim can and should continue in this Court after all" since "[t]here is no other court in which the wrongful death claim can or will be litigated." ECF 54, at 3. And because this would obviate any need to further amend or strike portions of the First Amended Complaint, "CCF will suffer no prejudice from this about-face." *Id.*

Enough is enough. The Court's patience with Powers' constantly changing course has run out. When Powers chose to pursue her wrongful death claim in the New York Case, that was her right. But this Court did not, and could not, make any sort of guarantee as to the outcome of the New York Case. That the New York Case was dismissed with prejudice for want of prosecution is the fault of Powers, and it has no bearing on the Ohio Case. Powers does not get "to directly or indirectly revive a wrongful death case against CCF at this juncture, simply because her New York [C]ase failed." *Id.*, at 4. The Court will not go so far as to say that Powers and her counsel intended to "thwart" these judicial proceedings with their actions over the past year, but the constant flip-

17

flopping, disrespect for orders, and late requests for extensions of time clearly demonstrate their "reckless disregard" for the effects of their conduct.

Evaluating Powers' conduct for the first factor in the equitable balancing test for Rule 41(b) involuntary dismissal makes consideration of the remaining three factors considerably less difficult. The second factor looks at "whether the defendants 'waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Schafer*, 529 F.3d at 739 (quoting *Harmon*, 110 F.3d at 368). The Court previously determined that the switch to the First Amended Complaint unfairly prejudiced CCF because "CCF expended time and resources on the fentanyl-specific theory that, under the new theory, it may not have." ECF 43, at 10. Powers was required to personally reimburse CCF for reasonable attorney's fees and costs associated with the time CCF spent on the fentanyl issue only. *Id.*; *see also* ECF 49. In her Response, Powers offers to flip-flop <u>again</u>, proposing to excise all wrongful death allegations. *See* ECF 57, at 15 (offering to strike various portions of the First Amended Complaint to "sanitize the Amended Complaint of its wrongful death allegations in the medical claim or claims asserted"). But even after these excisions, there remain allegations that sound in wrongful death. *See, e.g.*, ECF 40-1, at ¶¶ 41 ("In fact, Dr. Powers likely was bleeding internally during most of the last two days of his life which caused him both conscious pain and suffering and which contributed to the pulmonary and cardiac arrests he suffered."), 42 (alleging that because of the Cleveland Clinic's actions, "Dr. Powers suffered increased illness, symptoms, physical injuries, complications, and pain and suffering he would not otherwise have suffered, including the additional impairment of his general health, strength, vitality, ambulatory capabilities, mobility and enjoyment of life, and an increased fear of

death as he realized his condition was significantly worsening"). The prejudice CCF would suffer from continuing to allow Powers to flip-flop in the Ohio Case is readily apparent.

The third factor looks at whether "the derelict parties [were] on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644. The Court could not have been clearer over the past year that failure to follow the Court's orders, particularly those pertaining to the handling of the wrongful death claims in the various lawsuits, would result in sanctions up to and including dismissal. *See, e.g.*, April Scheduling Order ("[T]he Court ORDERS Plaintiff to file proof of motions to dismiss wrongful death claims in New York case and Pennsylvania case by 12:00 p.m. on 4/17/2025 or the Court will impose sanctions."); Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Apr. 18, 2025). ("The Court further ORDERS that Plaintiff file by noon on Friday, July 18, 2025, both: (1) an appearance from new counsel; and (2) proof of filings dismissing the wrongful death claims in the New York and Pennsylvania cases. If Plaintiff fails to file either of these documents, the Court will dismiss this case for want of prosecution."); *accord* ECF 43 (in the order conditionally granting the First Amended Complaint, recalling that, prior to the amendment, failure to file proof of dismissal of the wrongful death claims in the New York Case and the Pennsylvania Case would result in sanctions, including potentially dismissal). Outside of explicit warnings, Powers was also repeatedly informed by the Court that she would not be permitted to pursue a wrongful death claim in multiple lawsuits across different states, and then later repeatedly informed that she "[would] not be permitted to pursue a wrongful death case against [CCF], directly or indirectly" because she would not be permitted to continue equivocating or otherwise changing where she wanted to

19

pursue a wrongful death claim. Minutes of Proceedings, *Powers v. Cleveland Clinic Found.*, No. 1:22-cv-00198 (N.D. Ohio Jan. 12, 2026).

Finally, the fourth factor asks whether the Court considered lesser sanctions. Indeed, the Court previously imposed lesser sanctions against Powers for her conduct. ECF 43, at 10; ECF 49. Powers' continued misconduct leaves the Court with "no alternative sanction [to] protect the integrity of the pretrial process." *Schafer*, 529 F.3d at 738 (cleaned up) (quoting *Wu*, 420 F.3d at 644).

## III. CONCLUSION

The Court is mindful that Powers lost her husband, and that is why the Court has bent over backwards for nearly six years to allow Powers to pursue her claim against CCF. However, Powers' actions over the course of the litigation, and especially over the last year, have demonstrated a "clear record of contumacious conduct." *Wu*, 420 F.3d at 643; *see also Webster's Third New International Dictionary* 497 (1986) (defining "contumacious" as "perverse in resisting authority" and "stubbornly disobedient"). All four of the equitable factors weigh in favor of dismissal.

Accordingly, the Court hereby **GRANTS** CCF's Motion under Rule 41(b). Powers' First Amended Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Date: April 1, 2026                             */s/ Dan Aaron Polster*
                                                **Dan Aaron Polster**
                                                **United States District Judge**